UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HENRY COX,

                Petitioner,

      -vs-                   **DECISION AND ORDER**
                                              **No. 6:11-CV-6525(MAT)**

WILLIAM LEE, Superintendent of
Green Haven Correctional Facility,

                Respondent.
_____

## I.   Introduction

Pro se petitioner Henry Cox ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to § 2254, alleging that he is being held in Respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated as the result of a judgment entered against him on April 29, 2008, in New York State Supreme Court, Monroe County (Affronti, J.), following a jury verdict convicting him of two counts of robbery in the first degree (N.Y. Penal Law § 160.15(1), (2)).

## II.  Factual Background and Procedural History

### A.    Petitioner's Trial and Conviction

On October 4, 2007, James Slater ("Slater") was shot and killed outside his home in the City of Rochester. A cell phone, an iPod and approximately fifteen dollars in cash were taken from him. T.557-58. Darnell Norton ("Norton") and Petitioner both were charged with two counts of second degree murder (N.Y. Penal Law § 125.25(2) (intentional murder), § 125.25(3) (felony murder)); and

two counts of first degree robbery (N.Y. Penal Law § 160.15(1)
(robbery with intent to cause serious physical injury) and
§ 160.15(2) (robbery while armed with a deadly weapon).

Norton accepted a plea bargain and pled guilty to one count of
first degree robbery with a sentence promise of no more than
20 years incarceration, in full satisfaction of the indictment. In
exchange, Norton was required to undergo a lie detector test and
testify truthfully against Petitioner. Further, if the prosecutor
recommended, Norton could have received a sentence of less than
20 years.

Norton testified at trial that, on the evening of October 4,
2007, he had been at the home of his friend, Kisha, at 310 Alphonse
Street with Petitioner and several friends. After the other young
men left, Petitioner told Norton to go with him to a woman's house.
According to Norton, Petitioner was carrying a .22-caliber revolver
in the waistband of his pants. They got on their bicycles and rode
for about 10 minutes before arriving at their destination on Barons
Street.

Norton testified that when they stopped, Norton borrowed
Petitioner's cell phone to call Monique Jones ("Jones"). While
talking to her, Petitioner got off of his bicycle. Norton then
noticed Slater running down Barons Street while being pursued by
Petitioner on foot. Norton watched as Petitioner shot Slater in the

back,[1] causing him to fall to the ground. Jones testified that she heard Norton exclaim, "Oh, stop, man. What are you doing?" followed by the sound of a gunshot. T.628.[2]

Norton testified that he ended the call with Jones and ran over to Petitioner and Slater, saying "Hey, what's going on?" Petitioner turned the gun on Norton, told him to shut his mouth, and demanded that he search Slater's pockets. Norton testified that he removed some cash, a cell phone, and an iPod from Slater's pockets and displayed the items to Petitioner, who frowned. Petitioner then pointed the gun at Slater, who was lying on his back, and shot him in the chest.

Norton testified that he and Petitioner fled on their bicycles and returned to 310 Alphonse Street where Norton laid the proceeds of the robbery on the kitchen counter. He recalled that Petitioner picked up the cash and the cell phone, and then returned a couple days later to retrieve the iPod.

Slater's sister, Rochelle Slater ("Rochelle"), was inside the house they shared on Barons Street talking on the phone when she

---

[1]

Caroline Dignan, M.D., the deputy medical examiner, testified that Slater sustained two gunshot wounds. T.389-92. One bullet entered the left groin area and passed through soft tissue around the hip. The other bullet entered the right side of the chest, traveling toward the left. It passed through the right lung and pericardium and caused perforating injuries to the heart. It then exited through the left rib. Thus, contrary to Norton's testimony, Slater was shot from the front, not from the back.

[2]

Citations to "T." refer to pages from the transcript of Petitioner's trial, submitted by Respondent as a separately bound exhibit.

heard the first shot. She then a voice she identified as Norton's say, "What are you doing? What are you doing?" This was followed by another shot. Rochelle called the police, but she did not know it was her brother who had been shot until the police told her.

Five days later, on October 9, 2007, the police executed a search warrant on the property of Cornelius Nesmith ("Nesmith"), an inmate at the Monroe County Jail, after receiving information concerning the stolen iPod. The police retrieved the iPod from Nesmith's property.

Also on October 9, 2007, Investigators Dominick and Penkitis of the Rochester Police Department met with Petitioner at the Public Safety Building. After being read his <u>Miranda</u> rights, Petitioner agreed to waive them and speak to Investigators Dominick and Penkitis. Petitioner said that he had heard about the shooting on Barons Street, but he had not been there and did not know who was responsible. Petitioner explained that he had been at his friend Kisha's house on Alphonse Street on October 4th with a bunch of people including "Pookie" (i.e., Norton), and that he "wouldn't doubt" it if "Pookie" had done the shooting and trying to pin the blame on him. T.410-12.

The investigators took a 10 minute break. When they returned, they asked Petitioner about Slater's iPod which had been recovered from Nesmith's property at the jail. Petitioner admitted that he

-4-

had seen Nesmith (a/k/a, "Slugs") around the time of the shooting, but he claimed he had never possessed the iPod.

After another short break, Petitioner admitted that he had the iPod in his possession at one point but continued to insist he had nothing to do with Slater's death. Petitioner said that he had gone to Kisha's house on Alphonse Street and taken the iPod from there. However, he did not remember what he had done with it.

The investigators then left Petitioner alone for about an hour and a half. Investigator Dominick was informed that Petitioner had asked to speak with them. Investigator Dominick re-entered the interview room at which time Petitioner asked, "What if I told you I was there but I didn't do anything?" T.421-22. Investigator Dominick responded that he could not make any promises. Petitioner continued, stating that he, Norton, and a third man were standing in any alley by Slater's house on Barons Street. According to Petitioner, the third man and Norton "got up on [Slater]" and shot him as he walked by. Petitioner said he did not see who fired the gun. Petitioner refused to give a name for the third man, stating that he would not "snitch". T.422. Afterwards, Petitioner, Norton, and several of Norton's friends ended up back at Kisha's house on Alphonse Street. It was then that Petitioner took the iPod stolen from Slater. The interview ended, and Petitioner was allowed to leave the station.

-5-

On October 10, 2007, Investigator Dominick met with Petitioner again, and Petitioner waived his <u>Miranda</u> rights. According to Petitioner, he had been at a meeting on the day after the shooting with Norton, Nesmith, and three other men (Perry Sloan, Shaquaan Henry, and Da'Marri Shaw). During the meeting, Norton made threats and warned the group not to say anything about the shooting.

Terrell Wilson ("Wilson") testified for the prosecution that he had known Petitioner for a few months. Pookie (Norton) was Wilson's godson's uncle. One day, Petitioner "holler[ed] at [Wilson]" that he "had put in some work[,]" T.529, around the area of Barons, Bernard, and Alphonse Streets. T.530. Petitioner said that he "had to get his paper up[,]" meaning "get some money". T.530. Petitioner said he "ain't worried about it" because the police "had never found out anything about it." T.530. Wilson admitted that he if had not testified at Petitioner's trial, it would have meant a violation of his parole and a return to prison.

The defense called one witness, Robert Lee Lewis ("Lewis"). Lewis admitted to having 7 felony and 28 misdemeanor convictions over the course of 32 years, and to using various aliases, names of family members, and various birthdates when he had been arrested in the past. Lewis testified that he been the cell adjacent to Petitioner's at the Monroe County Jail for about 3 weeks. According to Lewis, Petitioner seemed "troubled". When he asked Petitioner about the charges he was facing, Petitioner said that "a guy named

-6-

Norton" followed a man and shot him. Petitioner told Lewis that he was "scared" because Norton had guns at his house. T.653-54.

On April 14, 2008, the jury returned a verdict acquitting Petitioner of both counts of second degree murder, but convicting him of both counts of first degree  robbery.

**B.    Sentence and Direct Appeal**

Petitioner was sentenced, on April 29, 2008, to a determinate term of 25 years in prison, plus 5 years of post-release supervision.

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. The Appellate Division unanimously affirmed the conviction on November 12, 2010. People v. Cox, 78 A.D.3d 1571 (4th Dep't 2010). The New York Court of Appeals denied leave to appeal on January 28, 2011. People v. Cox, 16 N.Y.3d 742 (2011).

**C.    Post-Conviction Proceedings in State Court**

In pro se papers dated March 29, 2012, Petitioner filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Monroe County Supreme Court ("the § 440.10 court"). Petitioner argued that trial counsel was ineffective in failing to challenge the verdicts as repugnant and for eliciting testimony from Norton on cross-examination that he had taken a polygraph test. On April 11, 2012, the § 440.10 court denied the motion on multiple grounds, including that Petitioner's

claims were based on vague, conclusory and unsupported allegations; could have been raised on direct appeal; and were meritless. In March of 2013, Petitioner sought an extension of time to file an application for leave to appeal the denial of his C.P.L. § 440.10 motion to the Appellate Division. The prosecution opposed the request. On May 22, 2013, the Appellate Division denied permission to file a late leave application.

Also on March 29, 2012, Petitioner filed an application for a writ of error _coram_ _nobis_, attacking his appellate counsel's performance. The Appellate Division summarily denied relief on June 8, 2012. Respondent has indicated that as of August 8, 2014, Petitioner's application to the New York Court of Appeals for leave to appeal remained pending.

**D.   The Federal Habeas Proceeding**

Meanwhile, on October 18, 2011, Petitioner commenced the instant habeas corpus proceeding, arguing that (1) trial counsel was ineffective in (a) failing to preserve critical issues for appeal; (b) failing to object when the prosecutor shifted the burden of proof during summation; and © elicited prejudicial testimony from Norton regarding the fact that he took a polygraph test; (2) appellate counsel was ineffective in failing to argue that trial counsel was ineffective in failing to preserve issues for appellate review; (3) the verdicts were not supported by

legally sufficient evidence; (4) the verdicts were repugnant; and (5) the prosecutor committed misconduct during summation.

Because Petitioner's claims regarding ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and repugnancy of the verdicts still were pending in state court at the time he filed his habeas petition, Petitioner sought a stay of this proceeding so that he could finish exhausting these claims. On March 8, 2013, this Court denied Petitioner's request to exhaust the repugnant verdicts claim, finding that because the claim is not cognizable on federal habeas review, exhausting it would be futile. However, the Court granted a stay with regard to Petitioner's remaining unexhausted claims.

On February 14, 2014, Petitioner filed a "motion to discontinue" in which he sought to withdraw the unexhausted claims from his petition. The Court granted the motion on June 20, 2014, and dismissed Petitioner's claims of ineffective assistance of trial and appellate counsel with prejudice. Petitioner now proceeds only on his exhausted claims, i.e., that the evidence was legally insufficient and that the prosecutor committed misconduct.

Respondent filed an answer and opposition memorandum of law on August 8, 2014. Petitioner did not file a reply brief.

For the reasons discussed below, Petitioner's request for writ of habeas corpus is denied, and the petition is dismissed.

### III. Merits of the Petition

#### A.    Insufficiency of the Evidence

Petitioner argues, as he did on direct appeal, that his robbery convictions violate due process because they were based on legally sufficient evidence. Petitioner asserts that the only evidence of his participation in the crime was provided by his accomplice, Norton. According to Petitioner, the prosecution failed to adduce sufficient corroborative evidence of Norton's testimony, as required by C.P.L. § 60.22(1). The Appellate Division held that Petitioner failed to preserve for review his contention that Norton's testimony was not sufficiently corroborated, as required by C.P.L. § 60.22(1), and in any event, the claim was without merit. <u>Cox</u>, 78 A.D.3d at 1571 (citing N.Y. CRIM. PROC. LAW § 470.05(2); <u>People v. Reome</u>, 15 N.Y.3d 188, 191-92 (2010)).

Respondent argues that the Appellate Division's reliance on an adequate and independent state ground, the contemporaneous objection rule, has resulted in a procedural default of this claim. Respondent alternatively argues that the claim is not cognizable on habeas review and without merit. Because the claim may be disposed of easily on the basis of non-cognizability, the Court need not address Respondent's arguments concerning procedural default and the merits of the claim.

C.P.L. § 60.22 provides in relevant part as follows: "A defendant may not be convicted of any offense upon the testimony of

an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. CRIM. PROC. LAW § 60.22(1). As Respondent notes, Petitioner's claim is based solely on the provision of New York State's Criminal Procedure Law, Section 60.22(1), requiring corroboration of accomplice testimony. By contrast, under Federal law, there is no constitutional rule requiring the corroboration of accomplice testimony. See Caminetti v. United States, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."). Indeed, under Federal law, a conviction may be sustained on the basis of the testimony of a single accomplice, provided that it is "not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993) (citing United States v. Parker, 903 F.2d 91, 97 (2d Cir.), cert. denied, 498 U.S. 872 (1990)). "Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." Gordon, 987 F.2d at 906 (citations omitted).

Habeas review under 28 U.S.C. § 2254 is available only with regard to issues of Federal constitutional magnitude. See 28 U.S.C. § 2254(a); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]")

(citations omitted). Because Petitioner's claim regarding the insufficiency of corroborative evidence for Norton's testimony rests solely on New York State law, it is not cognizable in this habeas proceeding. See, e.g., Martinez v. Walker, 380 F. Supp.2d 179, 184 (W.D.N.Y. 2005) ("Because Martinez's claim is based solely on the New York state law accomplice corroboration requirement, it does not constitute a claim of a violation of a federal constitutional right.") (internal citation omitted); see also Young v. McGinnis, 319 F. App'x 12, 13 (2d Cir. 2009) (unpublished opn.) ("[R]egardless of whether there was a violation of state law in denying [petitioner's] request for an accomplice-corroboration instruction, there was no violation of federal law, let alone of any federal constitutional right.").

**B.   Prosecutorial Misconduct**

Petitioner reprises his claim, raised originally on direct appeal, that prosecutorial misconduct deprived him of his right to a fair trial. In particular, Petitioner asserts that the prosecutor improperly (1) made a remark referring to Petitioner's failure to call certain witnesses, thereby shifting the burden of proof, see T.706 ("Why didn't the defense call any witnesses they claim would exonerate their client?"); (2) denigrated defense witness Lewis, see T.706, 707; (3) referred to a document not in evidence (Lewis' criminal history) when discussing Lewis' credibility, see T.710 ("Yeah, he admitted to the things I had in front of me on pieces of

-12-

paper, and he knew I had."); and (4) read portions of the trial transcript rather than simply commenting on the evidence.

With regard to the first comment implicating the defense's burden to call witnesses, the trial judge sustained the objection and instructed the jury to "[d]isregard it" and "recall the earlier instruction [he] gave. . . ." T.706-07. With regard to the third comment, the trial judge sustained the objection and directed the prosecutor to confine himself to "[f]air comment on the evidence, . . . not what [he] may or may not have had." T.710. Trial counsel also objected to the fourth instance of alleged misconduct, when the prosecutor was re-reading portions of the trial transcript in the context of his argument concerning Wilson's testimony. T.713. The trial judge issued a curative instruction noting that the jury has heard the evidence and "will recall exactly what the evidence was" and that "what is being said by [the attorneys] is not evidence[.]" T.713.

With regard to the second example of alleged misconduct, trial counsel did not object to the prosecutor's statement that he would like to give defense witness Lewis "another alias, Mr. Desperation[.]" T.706. Trial counsel likewise did not object to the comment that Lewis was a "jailhouse snitch[.]" T.707.

The Appellate Division rejected, as unpreserved and, in the alternative, on the merits, Petitioner's claim of prosecutorial misconduct. That court stated "[w]ith respect to that part of the

summation to which defendant objected, . . . . the court issued an immediate curative instruction and . . . defendant did not further object or seek a mistrial[,]" <u>People v. Cox</u>, 78 A.D.3d at 1572, and therefore "'the curative instruction must be deemed to have corrected [any] error to the defendant's satisfaction[.]'", <u>id.</u> (quotation omitted; alteration in original). The Appellate Division went on to hold that Petitioner "failed to preserve for [its] review his contention with respect to the remainder of the comments on summation", and it declined to exercise its discretionary interest-of-justice power to review those remaining comments. <u>Id.</u> (citing N.Y. CRIM. PROC. LAW §§ 470.05(2), 470.15(6)(a)).

Respondent argues that Petitioner's prosecutorial misconduct claim is partially procedurally defaulted due to the Appellate Division's reliance on an adequate and independent state ground, the contemporaneous objection rule, to dismiss certain of the claims. The Court notes that contrary to the Appellate Division's finding, Petitioner's trial counsel did object to all but two of the remarks that were challenged on appeal, namely, those that denigrated defense witness Lewis. Thus, it appears the Appellate Division misread the record in concluding that certain claims were unpreserved by objection. Rather than resolve this potentially complex procedural default issue, the Court will proceed to a consideration of the merits of Petitioner's prosecutorial misconduct claim.   In reviewing a claim of prosecutorial

misconduct on habeas corpus, the appropriate standard of review is "the narrow one of due process, and not the broad exercise of supervisory power." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The relevant question is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); see also Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). Generally, inappropriate prosecutorial comments, standing alone, are insufficient to reverse a conviction. United States v. Young, 470 U.S. 1, 11 (1985). In order to assess the impact of the allegedly improper comments, the reviewing court must consider the totality of the circumstances. Id.

Here, the trial judge sustained the objections as to the two most objectionable comments and provided curative measures, thereby mitigating any potential prejudice. See, e.g., United States v. Feliciano, 223 F.3d 102, 123-24 (2d Cir. 2000) (finding that trial court appropriately mitigated any potential prejudice from prosecutor's summation by informing jurors that their "recollection and interpretation of the evidence," and not "[w]hat the lawyers say," controlled their verdict) (citing United States v. Mapp, 170 F.3d 328, 338 (2d Cir. 1999)). Specifically, the trial judge struck the comment that could have been interpreted as suggesting that Petitioner had a burden to put forth proof and referred the jury to

his earlier instructions. Likewise, the trial judge sustained the objection regarding the prosecutor's comment referring to a defense witness' rap sheet, which was not in evidence. With regard to the prosecutor's reading of the transcripts, the trial judge instructed the jury that the arguments of the attorneys were not evidence and they were responsible for recalling what the proof in fact was. The jury is presumed to have followed these and the remainder of the judge's instructions about the burden of proof and the weighing of testimony and arguments. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citation omitted).

The comments to which defense counsel did not object, namely, those referring to a defense witness in a derogatory manner, did not exceed the bounds of the type of "vigorous advocacy" permitted on summation. See United States v. Jaswal, 47 F.3d 539, 544 (2d Cir. 1995) (noting that "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation" and finding that the prosecutor's characterization of the defense case as a "fairy tale" was not improper); Jones v. Keane, 250 F. Supp.2d 217, 237 (W.D.N.Y. 2002) (references to petitioner during summation as a "liar," "con artist" and "flimflam man" were "rhetorical comments in line with the theory of the prosecution").

Finally, and most importantly, the jury's verdicts reflect that even if the prosecutor's comments were improper, they did not

detract from the jury's ability to impartially and methodically analyze the proof, given that the jury acquitted Petitioner of the two murder charges. This "reinforces [the] conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly." United States v. Young, 470 U.S. 1, 18 n. 15 (1985). For these reasons, the Court finds that the complained-of comments did not render Petitioner's trial "so fundamentally unfair as to deny him due process[,]" Donnelly, 416 U.S. at 645. Therefore, Petitioner's claim of prosecutorial misconduct does not warrant habeas relief.

## IV.  Conclusion

For the reasons discussed above, the petition (Dkt. #1) is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         November 26, 2014

-17-